district No. 1, there would then be 86 ballots thus improperly rejected and defectively returned. It is hardly probable that all of these ballots showed affirmative votes on the question of issuing license to hotel keepers. But assume that they were all in the affirmative, and counting them as such, still the no-license proposition in the case of hotel keepers would be defeated by 26 majority. Counting all such ballots in the affirmative for the other propositions would, of course, leave them defeated, even by a greater majority. It is therefore manifest that the electors of the town, in a very large and representative vote, defeated the excise questions in controversy by substantial majorities, after counting the disputed ballots in the most favorable manner to the applicants.

These 86 ballots should have been returned by the inspectors, and included in their totals of the whole number of votes cast. It is said that the excuse for not returning them was that in the blank returns provided by the town clerk no columns for such return appeared. This, however, did not relieve them from following the plain direction of the statute. It may also be that, in the figuring of the votes cast upon the various propositions, the inspectors were not as clear as they might have been. Not all the ballots were voted alike upon all the propositions. Some were not voted at all. Others were voted in favor of, with a part against. But whatever the situation, it finally comes down to the 86 ballots rejected as void and not returned.

The electors of the town should not be deprived of their choice in the matter of license by the acts of the inspectors, which could not change the result, nor should the town be put to the expense of a resubmission of the questions by a special town meeting. Whether the town voted wisely or not upon the question of license to hotel keepers is of no moment. It is unfortunate that any mistakes were made by the inspectors. It appears quite clear from the affidavits submitted that the electors of the town voted against the three propositions for issuing license, and that by no process of counting could any one of the propositions receive an affirmative majority. The carelessness or misconduct of the inspectors of election or canvassing board should not and does not, I think, defeat the will of the electors as expressed by their votes. The application must be denied, with $10 costs.

Application denied, with $10 costs.

---

(40 Misc. Rep. 530.)

DEGNON–McLEAN CONST. CO. v. CITY TRUST, SAFE DEPOSIT & SURETY CO. OF PHILADELPHIA.

(Supreme Court, Trial Term, New York County. April, 1903.)

1. CONTRACT—BREACH—DAMAGES—LIABILITY OF SURETY.

A contract provided for the furnishing of foundation stone by subcontractors for a bridge tower of a required size and shape, and that upon the subcontractors' failure to perform the contractor might procure the required stone elsewhere, and recover the difference between the contract price and the price paid. The subcontractors failed to furnish the foundation stone, and the contractor notified the subcontractors' surety of the default, and offered to allow it to furnish the stone, and

submitted a number of bids to the surety company. *Held*, that the contractor was entitled to recover against the surety the difference as money paid and expended for the subcontractors, with interest.

Action by the Degnon-McLean Construction Company against the City Trust, Safe Deposit & Surety Company of Philadelphia. Judgment for plaintiff.

Parker & Aaron, for plaintiff.

Frederic J. Swift, for defendant.

CLARKE, J.   Price & Garrison contracted with plaintiff to furnish it certain granite at specified prices for the construction of the tower and anchorage foundations of the Brooklyn end of the new East River bridge, which plaintiff was under contract with the city to build. The defendant guarantied to plaintiff the performance by Price & Garrison of their contract.   Price & Garrison failed to perform. Plaintiff procured the granite elsewhere, and now brings an action against defendant on its bond to recover the difference between what it actually paid for the granite and what it would have been required to pay to Price & Garrison under their contract if they had performed.   Plaintiff had a verdict, and a question of law was reserved as to whether interest should be added to the amount found due by the verdict from the date of demand.   Defendant claims that, as the damages were unliquidated, and as the granite had no market value, interest is only recoverable from the time of the judgment.   It seems to be the settled rule in this state that in an action to recover unliquidated damages for a breach of a contract interest is not allowable unless there is an established market value of the property, or means accessible to the party sought to be charged of ascertaining by computation or otherwise the amount to which the plaintiff is entitled.   Sloan v. Baird, 162 N. Y. 327, 56 N. E. 752; Gray v. Central R. R. Co. of N. J., 157 N. Y. 483, 52 N. E. 555.   I have examined the cases cited on defendant's brief in support of the claim that, applying this rule to the case at bar, interest is not recoverable. There is a marked difference in the facts.   In each of those cases there was a breach of an executory contract, and the damages sought to be recovered were really unliquidated and unascertained.   They were in the nature of loss of prospective profits.   In the case at bar a clause of the original contract between Price & Garrison and plaintiff provided:

"Should the parties of the second part (Price & Garrison) fail to promptly deliver granite stone as needed by the party of the first part, and as required hereunder, the party of the first part may procure any required stone elsewhere, and, in the event that the cost of the stone procured shall exceed the price herein named, the excess so paid shall be paid by the parties of the second part."

When Price & Garrison failed to deliver, and when they notified plaintiff that they would not and could not perform, plaintiff obtained bids from a number of granite dealers, notified defendant of Price & Garrison's default, asked it if it desired to furnish the stone, submitted the bids it had received, offered any information required, and then accepted the lowest bid offered, and now seeks to recover

the difference between the Price & Garrison contract and the amount actually paid by it. And this amount would seem, under the terms of the contract with Price & Garrison, to come under the category of money paid, laid out, and expended for their benefit. Further, while granite of the style and quantity required did not have a market value in the ordinary acceptance of the word—that is, it was not a staple which could be bought ready-made at any corner store, it being cut from the quarry to a certain extent to required size and shape— yet the furnishing of the detailed bids to defendant, the request for it to supply the stone, the acceptance of the lowest offer, and plaintiff's offer to furnish all the information required, seem to me to bring this case squarely within the rule that the "means were accessible to the party sought to be charged of ascertaining by computation or otherwise the amount to which the plaintiff is entitled." Gray v. Central R. R. Co. of N. J., 157 N. Y. 483, 52 N. E. 555, was an action to recover damages for breach of contract to purchase an old steamboat, and the court found that for such a vessel there was not a market value in the ordinary sense of those terms. The court denied interest, because the plaintiffs retained the property as their own, and brought the action for damages upon the refusal of the defendant to perform its contract. But the court said:

"When the defendant refused to perform its contract, the plaintiffs could have brought an action against it to recover the contract price of the vessel, in which case a recovery by them would carry interest. Or they could have sold the vessel for the account of the defendant, and have brought an action to recover the difference between the amount realized upon the sale and the contract price, in which case a recovery would also carry interest."

If, under such circumstances, a breach and a sale for defendant's account would carry interest, certainly a purchase for defendant's account must. This is not an action for loss of prospective profits, but to recover the actual loss of the difference between the contract price and the cost of supplying the deficiency. The verdict has established the damage at the amount sued for, and that the price paid was fair and reasonable, and that plaintiff used all the efforts that a reasonably prudent man would to get the stone at the lowest price he could to make the loss as small as possible. Defendant had due notice and full opportunity to ascertain the amount. Plaintiff is entitled to the interest from the time of demand, to be added to the verdict. Settle the amount and order upon notice. Extra allowance 3½ per cent.

Judgment accordingly.